## MABEL FLIKEID v. NEW YORK LIFE INSURANCE COMPANY.[1]

May 1, 1925.

Nos. 24,482, 24,483.

**Application for life insurance false in material respect.**
It appears conclusively that insured, prior to the application for the insurance, had consulted and was treated by a physician, which facts he denied in the application; that the same materially affected the risk and that the same would not have been accepted had the truth been revealed.

1. See Life Insurance, 37 C. J. p. 647, § 447.

Two actions in the district court for Blue Earth county. The cases were tried before Comstock, J., and a jury which returned verdicts in favor of plaintiffs. Defendant appealed from orders denying its motions for judgment notwithstanding the verdict or for a new trial. Reversed.

*Mitchell, Doherty, Rumble, Bunn & Butler,* for appellant.
*William Stradtmann* and *F. F. Ellsworth,* for respondents.

QUINN, J.

Two actions to recover upon two insurance policies, issued by the defendant company, upon the life of John A. Hagman, in favor of his five children, named as plaintiffs. The defenses are that the policies were procured by fraud and deceit, enacted through false statements and representations made by the insured in the application for such insurance. The causes were tried separately and verdicts returned in favor of the plaintiffs in each case. The appeals are from an order, in each case, denying defendant's motions for judgment in its favor or for new trials. The appeals were submitted to this court together.

The insured was 56 years of age. His children were all grown up and gone out for themselves. He conducted a restaurant and

[1]Reported in 203 N. W. 598.

roomed at the home of Mr. and Mrs. Scholl, in the city of Mankato. He spent Christmas day, 1920, with his daughter in St. Paul, returning on December 27 at about 10 o'clock in the evening. After an exchange of greeting as he entered the Scholl home, a photograph was handed to him. He looked at it and attempted to hand it back. It dropped from his hand. He had lost his power of speech. He could not drink water. He remained unable to speak for nearly an hour, and was then able to speak only in a mumbling manner. Dr. Andrews was called. He arrived shortly. The doctor examined him, put him to bed. He spoke to the doctor in a mumbling way and remained in bed during the following day. He got up from bed the second day, but mumbled in his talk. On the third day he talked in his usual manner. The foregoing is in accordance with the undisputed testimony of Mrs. Scholl.

Dr. Andrews testified that he was called to attend the insured the first time on December 27, 1920, at the Scholl home, between 10 and 11 o'clock in the evening; that he examined the patient and found him unable to talk; that he did not appear to know what he was doing; that, in the course of about ten minutes, his speech began to return, although it was a mumbling speech; that he called next morning and examined him more thoroughly; that his condition was much improved, but his speech was not normal; that his blood-pressure was a little high; that there were no signs of paralysis outside of his speech; that he saw the patient three times at his office during the next few days, and again a number of times in December and the following January; that his diagnosis, made when he first saw the patient, was a slight stroke of apoplexy, and subsequent examination confirmed that conclusion; that, judging from his sickness and from the examination made, he was of the opinion that the insured had glioma of the brain when he first saw him in December, 1920; that glioma is a tumor of the brain; that he told the patient that the examinations he made in December, 1920, showed high blood pressure; that he had a spell resembling a stroke of apoplexy and that he should be a little careful as to his habits, etc.

Dr. Madden testified that he had been a practicing physician for 35 years; that he knew the insured since early in 1917; that they

were friends, were together considerably, used to take walks together and used to call upon one another quite often up to a short time before his death; that the insured consulted him as a physician from time to time; that, early in 1921, he began to complain of headache and of a great deal of nervous disturbances; that he first complained of nervousness about the middle of March, 1921, and from that time on; that he examined the insured about the middle of March; that the insured then told him, for the first time, of the attack he had in December before; that the insured told him at that time that he had an attack, that he became momentarily unconscious, and that he was quite disturbed over it, that everything became dark and that he consulted Dr. Andrews about it; that he saw the insured occasionally up until Memorial Day, 1921; that, at that time, he had a seizure harder than at other times, and that he told him to go to St. Paul and see Dr. Riggs, which he refused to do, so the witness ceased to be his advisor thereafter.

The application for the first policy was made by Mr. Hagman under date of March 19, 1921. Dr. Sohmer of Mankato was the local medical examiner of the New York Life Insurance Company at that place. He testified that he examined Mr. Hagman for life insurance at the clinic in Mankato, on March 19, 1921; that he was alone with the applicant in a room; that he asked him the questions as they were on the regular application form; that, as the questions were answered, he wrote down the answers as given by the applicant; that the applicant signed his name to the application as being correct; that he (witness) then went on and completed the physical examination in accordance with the application blank; that he then signed the application and sent it to the company; that plaintiff's Exhibit A, third page, is a photograph copy of the questions and answers and of the signature of Mr. Hagman; that he did not disclose to him that he had ever suffered any ailment or disease within the preceding five years, nor that he had consulted any physician within that time; that he examined him again in July of that year, at which time he complained of his right leg, arm and ear bothering him; that he examined him again in December of the same year; that he then complained of the loss of word

memory and that he had pricking sensations in his right arm and leg which had been present since the previous January, and that all of his teeth had· been extracted, and he had artificial ones.

The application contained the following caption, questions and answers:

THE APPLICANT MUST ANSWER THESE QUESTIONS FULLY AND WITH SPECIAL CARE:

9. Have you consulted a physician for any ailment or disease not included in your above answer?

Ans. No.

What physician or physicians, if any, not named above, have you consulted or been treated by within the last five years and for what illness or ailments?

Ans. None.

I AGREE, REPRESENT AND DECLARE, on behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that I am a proper subject for life insurance. Each and all of my said statements, representations and answers contained in this application are made by me to obtain said insurance, and I understand and agree that they are each material to the risk and that the company believing them to be true will rely and act upon them.

Dated this 19th day of March, 1921.

The application was attached to and made a part of policy No. 6,936,729, referred to in the answer in the first above entitled action. That policy was forwarded from the defendant's home office to the insured on March 24, 1921. There is testimony in the record, given by officers at the home office, to the effect that, had the questions been answered in accordance with the foregoing testimony as to the conditions of the insured and his actions with reference thereto, such as Dr. Andrews related, the policy would never have been issued.

Mr. Hagman finally went to the Mayo Clinic at Rochester, where he was operated on and where he died on February 1, 1922, from a large destructive tumor, otherwise known as glioma, of the left side of the brain. Upon discovering the situation as to the insured's condition in the respects indicated, the insurance company gave notice of its rescission and tendered a return of the premium paid.

The only witness, called by plaintiffs, was Mr. Corn who testified in effect that, during the first three months in 1921, he met Mr. Hagman three or four times a week; that they were negotiating a partnership in the restaurant business; that Mr. Hagman was continually active around; that they commenced the restaurant business together in March, and he took an active part in the management of such business; that, at times he would spend from 12 to 14 hours per day in connection therewith; that he never knew him to stay away from the business on account of illness; that Mr. Hagman remained active until he went to Rochester in September. In this connection, the medical testimony was to the effect that glioma of the brain would not necessarily affect the general appearance of the person afflicted until it had progressed into advanced stages.

The jury found against the defendant and the question upon this appeal is whether the evidence was such as to entitle defendant to a directed verdict at the close of the testimony. We answer the query in the affirmative. The statute, section 3527, G. S. 1913, provides as follows:

"The falsity of any statement in the application for any policy covered by this act shall not bar the right of recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

We are of the opinion that the evidence conclusively shows that Hagman did consult a physician as to his physical condition in December, 1920, and in January, 1921. As bearing upon these matters, we find no conflict in the evidence. The testimony stands uncontradicted and is not improbable. It cannot be arbitrarily disre-

garded but must be given effect. Second Nat. Bank of Winona v. Donald, 56 Minn. 491, 58 N. W. 269; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. Our conclusion is that the answers to questions above recited relative to consulting a physician materially affected the acceptance of the risk and materially affected the hazard assumed by the insurer.

The foregoing statements, relating to the testimony of the witnesses as to the condition, treatment and care of the insured, apply to the second policy, No. 6,988,229, which bears date June 13, 1921. That policy was issued upon a supplemental application and agreement, signed by the insured, which was attached to and made a part of the policy and which reads as follows:

"SUPPLEMENTAL APPLICATION FOR INSURANCE.

To the New York Life Insurance Company:

Supplemental to my application for insurance, dated the 19th day of March, 1921, I hereby apply for $2,000 additional insurance on the ordinary Life, without disability benefits, or double indemnity plan, and I reiterate and confirm all the agreements, statements, representations and answers contained in my said original application and agree that said original application shall form a part of said additional insurance contract. I further warrant and declare that no change has occurred in my health or insurability since the date of my said original application.

Dated policy—June 13, 1921.

Beneficiary—Mabel Flikeid, Roy W., Philip, Florence and Dewey Hagman, children, share and share alike.

Dated June 13, 1921.

> JOHN A. HAGMAN,
> Applicant.

In this connection, and before delivery of the policy, Mr. Hagman executed a declaration and agreement as follows:

"DECLARATION AND AGREEMENT BY APPLICANT BEFORE DE-
LIVERY OF NEW POLICY,

June 13, 1921.

Policy No. 6,988,229 for $2,000.

I hereby declare that since my declarations to the Company's
Medical Examiner, which formed a part of my application for in-
surance dated March 19, 1921, I have not had nor needed any medical
advice; that there has been no change in my physical condition,
mode of life, habits or occupation; that I have not been examined
by any other Life Insurance Company either on an application for
new insurance or for any other reason without a policy having been
issued thereon, nor has any Life Insurance Company examined me
either on an application for insurance, for reinstatement of insur-
ance, or otherwise, and declined to issue or reinstate the policy, nor
has any life insurance company offered to issue to me a policy dif-
ferent from the one applied for by me.

The foregoing declaration is an amendment to and is hereby made
a part of my said application, and I hereby understand and agree
that it is material to the risk and that the Company believing it to
be true, will rely and act upon it.

JOHN A. HAGMAN,
Applicant.
P. O. Address, Box 103,
Mankato, Minnesota."

The materiality and effect of the misrepresentations disclosed by
the record are more emphatic when considered in connection with
the second policy than with the first. The evidence is uncontra-
dicted that the risk would not have been accepted had the fact of
the consultation with and treatment by Dr. Andrews been disclosed.
It would, under the custom of the appellant, in all probability, have
led to inquiry of such physician and a disclosure of the truth. For
these reasons, the order appealed from cannot stand. It is clear,
from a reading of the record as a whole, that appellant was entitled
to a directed verdict in each case at the close of the testimony. The
orders appealed from are reversed with direction to enter judgment
for the defendant in each case, notwithstanding the verdicts.

Reversed and remanded.