WILLS, SR., ADMR., *v.* THE NATIONAL LIFE & ACCIDENT INS. CO.

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

(Decided June 25, 1928.)

▮▮▮▮▮▮▮▮▮▮

*Mr. Chester K. Gillespie,* for plaintiff in error.
*Messrs. Dustin McKeehan, Merrick, Arter &
Stewart,* for defendant in error.

SULLIVAN, P. J. This was an error proceeding
wherein one Ida Cooper sought to recover against
the National Life & Accident Insurance Company on
two policies of insurance issued to her on the life
of one Roosevelt Shelby, and subsequently, upon her
decease, the action was revived in the name of J.
Walter Wills, Sr., administrator of the estate of
Ida Cooper. The court below pronounced judgment
on the verdict of the jury, after the submission of
the case, under proper instructions of the court, and
it is sought to reverse the finding on the ground that
there is no liability because the insured was not in
sound health at and prior to the time of the issuance
of both of the policies.

The provisions of the policy governing the issue
are as follows:

"No obligation is assumed by the company prior
to the date hereof, nor unless on said date the in-
sured is alive and in sound health. Should the pro-
posed insured not be alive or not be in sound health
on the date hereof any amount paid to the company
as premiums hereon shall be returned."

"No liability is assumed by the company prior
to the date hereof, nor unless on said date and de-

livery of this policy the first payment has been legally made and the applicant is then in sound health.''

There is credible evidence appearing in the record that the decedent, Roosevelt Shelby, the insured, prior to August 30, 1926, and November 1, 1926, the date of the issuance of the policy, was afflicted with pulmonary tuberculosis. An investigation by the public health bureau of the city of Cleveland, made December 17, 1926, resulted in the discovery of this condition, because of the symptoms and actual condition of the patient existing at the time of the investigation. Subsequent to this investigation, to wit, January 17, 1927, a period of about 4½ months after the issuance of the first policy, and a period of 2½ months after the issuance of the second policy, upon the life of decedent, he was taken to the Cleveland City Hospital and admitted to the tuberculosis department of this institution.

It is clear from the record that at this time the disease was in an advanced stage, and that it had existed at least for a period of about one year.

On March 3, 1927, the patient died in the hospital of pulmonary tuberculosis. The insurance company, upon ascertaining the facts, made a tender back of the premiums paid, but the same were refused, and, in the pleadings and at the trial, the company admitted the issuance of the policies, the death of the insured, and the payment of the premiums, and this status left as the issue the question whether the insured was in sound health at the time of the issuance of the policies.

Bearing upon this contention, the record shows that the public health bureau of the city of Cleve-

land, the medical director of the institution, and another physician connected with the tuberculosis department of the City Hospital testified, and from an examination of the testimony it is clear and conclusive that the burden of proof resting upon the insurance company is sustained, but it is urged that the testimony was incompetent and therefore inadmissible, because under the statutes of Ohio, and the authorities laid down by the courts, the communications were privileged.

Assuming, for the purpose of argument only, that the testimony of the physicians is based on privileged communications, we look to the record for other sources of information as to whether the insured was in sound health, at and about the time of the issuance of the policies, and we find the following excerpt from the testimony of the public health nurse:

" * * * I am a public health nurse, employed by the public health bureau of the city of Cleveland. In December, 1926, we were advised that Roosevelt Shelby, living on East Twenty-Eighth street, was suffering from tuberculosis. On December 17, 1926, I went to investigate the case. Roosevelt Shelby stated to me at that time that he had been ill 8 months and unable to work for the past 6 months; that he was under the care of Dr. E. J. Gunn for about 6 months prior to the Saturday before my visit; and that he had more recently called in Dr. Rucker. He had very heavy night sweats, constant coughing and expectoration. He wanted to return to Mississippi, but was undecided on account of his condition. He stated his brother died of tuberculosis several years ago, and his sister, Ida Cooper,

with whom he was living, died 2 months ago with tuberculosis. I left tuberculosis literature in the home. He was living with his sister, Ida Cooper, and her family. On the advice of the health department, Roosevelt Shelby was sent to the City Hospital.''

In the absence of any testimony of a substantial nature in the record, discrediting this evidence of the public health nurse, we are justified in saying, that, without the strict medical testimony, there is sufficient evidence of a credible nature to support the verdict of the jury.

A reviewing court cannot disturb the verdict if there is credible evidence to support it. The reversal can only be had as a matter of law. The opinion of the reviewing court, as judges, may be different from that of the jury, but even then the verdict cannot be disturbed if there is credible evidence upon all the essential points; and the only material point here, from the pleadings, is the question of sound health.

We are bound to follow the authorities, of which there are many, and among which are the following:

A mere difference of opinion of the court with the jury will not justify setting aside the verdict. *Remington* v. *Harrington,* 8 Ohio, 507.

''Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that

province of the jury.'' *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St., 167, 160 N. E., 683.

Keeping these authorities in mind, and confining ourselves to the testimony of the public health nurse, it is our judgment that, in the absence of contrary testimony, the verdict could not be reversed upon the weight of the evidence, under the rules of law above stated. But it becomes necessary to examine the medical testimony given by the medical director and the physician connected with the tubercular department in order to ascertain whether under the statute and the authorities the communications were privileged. As to the testimony of the public health nurse we think there can be no question, because she is not a physician, and is not named in the statute relating to privileged communications, and, while there are some authorities which hold that, even as to a nurse, the communication is privileged, yet we find upon examination of the cases cited that the reason for the holdings can be attributed to the provisions of the local statute, and consequently those authorities are not applicable in a state where a nurse is not included among those named in the statute defining privileged communications.

We think the ruling in *Cassidy* v. *Cincinnati Traction Co.,* 21 N. P., N. S., 125, 29 O. D., N. P., 6, is good law in Ohio and applicable to the case at bar. We quote from that case as follows:

''Statutory provision for the maintenance and control of a free public hospital by a municipality, with authority in the director of public safety to provide rules and regulations for its government, and a rule requiring the receiving physician to make a written report of each case with his diagnosis, ren-

ders such a report a public document or record, and therefore admissible in evidence.''

This authority is supported in *Sprang* v. *Doench,* 24 O. L. R., 188. In that case the record of the Cincinnati General Hospital as to the condition of patients, as determined by the physician, was held admissible.

In the case at bar, the question of constructive fraud is at least an element. While the applications for the insurance policies are not in evidence, yet the record discloses that the insured had knowledge at the time of the issuance of the policies of his condition, and it must be presumed that he had knowledge of the clauses voiding the policies in case his health was not sound. However, it is not important that he had this knowledge. The determinative question is the fact itself, as was laid down in *Metropolitan Life Ins. Co.* v. *Feczko,* 26 Ohio App., 287, 290, 159 N. E., 486, 487, in an opinion rendered by this court, from which we copy the following.

''It is true, the application becomes a part of the policy, but the policy expresses some conditions, and unless those conditions are complied with the law is, and always has been, that there can be no recovery upon the policy of insurance. In other words, the statements made in an insurance policy, if not true, are conditions which defeat the going into effect of the policy, or, in other words, make it absolutely void, and the authorities hold, without any exception, I think, that the policy is canceled even though the party makes those statements innocently. It is not a question as to whether he knew it or not. The question is that, if the fact existed and was not communicated to the insurance company, the policy

would be void at the option of the insurance company.

"Now in this case as soon as this man died and a demand was made for the payment of the policy, the insurance company upon learning these facts, tendered back the premiums and resisted the payment of the policy. They could not have known of these conditions in ordinary cases until the question arose in this way, and so the right to resist this policy was exercised by the insurance company."

We think the reasoning in *Metropolitan Life Insurance Co.* v. *Feczko, supra,* is very applicable to the case at bar.

As above stated, inasmuch as the element of constructive fraud at least entered into the discussion and determination of the instant case, we cannot hold that, where the issue is whether the patient was in sound health at the time of the issuance of the policies, the testimony of a physician in a public institution, where he is taken to prevent the disease spreading, is incompetent, or that he is estopped from testifying what the patient's condition appeared to be upon his entry to the hospital and what the nature of his disease is. There is not that professional relationship existing under circumstances of this kind as where a patient voluntarily selects a physician and communicates to him the nature of the disease, or submits his body for examination for the purpose of having the physician or surgeon determine the character of his disease. Under circumstances such as just related, there can be no question that the communication was privileged and that the statute applies.

In the case at bar, the insured unquestionably had pulmonary tuberculosis, and this disease, being dan-

gerous and contagious, forced the attention of the public authorities upon the subject, and it became necessary as a matter of public health that the patient for his own protection and the protection of society should be cared for at an institution where he would be segregated, where the public would be protected, and where he himself would receive proper medical attention and care.

It was circumstances of this character that made it necessary for the physician to determine the nature of the disease, and to say that his observations and conclusions were privileged communications would, in our judgment, be against public policy; and, in our judgment, in addition thereto, we do not think that the statute applies. This conclusion is fortified by the fact that constructive fraud entered into the case at bar, and to hold that, under the circumstances of the record, the insured is not estopped from claiming the privileges of the statute, would result in tending to establish a doctrine that is contrary to the principles of justice.

A proper interpretation of the clause of the policy which provides that the applicant must be in sound health is, we think, by operation of law, a waiver of the right to claim privileged communication under the statute, and an estoppel against objection to the evidence in the trial of a cause where the insured seeks to recover, because to hold otherwise would be to become a partner to the constructive fraud and the instrumentality of its perpetration.

It is well in examining the question under discussion to bear in mind that under Section 4021, General Code, the city of Cleveland established as a public institution the City Hospital, where the in-

sured was taken, and where he expired, because of pulmonary tuberculosis. This hospital, under Section 4035, General Code, is regulated by the director of public safety, and under the rules and regulations of this department the hospital is conducted, and the purpose of its existence is the protection of public health, and, of necessity, public records must be kept, and to say that these public records are not admissible in evidence because they are privileged communications would be a holding contrary to the principles of public policy, public health and public safety.

The substance of the testimony of the physician was from the records of the City Hospital, and it is our judgment, from an analysis of the record, that the court below did not commit reversible error in admitting the testimony of which there is complaint; but, as stated at the outset of our discussion, the unquestioned testimony of the medical nurse connected with the hospital furnishes credible evidence to support the verdict of the jury, rendered in favor of defendant, on the only substantial issue remaining in the case, to wit, whether the decedent's health was sound or otherwise at or about the time of the issuance of the policies.

Exception is taken to the court's charge upon the question whether the insured's health was sound, and we proceed to examine the question. The court charged upon this point as follows:

"It has not been stated directly that Roosevelt Shelby was not in sound health, but you are justified in drawing reasonable inferences from the testimony you have heard. It is not required of you that you determine absolutely that Roosevelt Shelby was not

in sound health. * * * You are to determine the probabilities of the existence of that condition * * *.

"The burden of showing that he was not in good health at the time of the issuance and deliverance of those policies is upon the insurance company. It is presumed under these circumstances that the insured was in good health until it is shown to you by the evidence that he was not in good health. Now, then, if upon hearing all the evidence you determine that the defendant has shown to you by a preponderance of the evidence that Roosevelt Shelby was not in sound health, at the time of the delivery of these policies, then the insurance company should not be required to pay these policies. If you should conclude from the evidence that the insurance company has not shown to you that fact, then they should pay the policies."

From an examination and analysis of the charges above, we think the jury was intelligently and legally instructed as to its duty upon the question of the health of the insured, and that it was sound is established by the definition which is given by our own Supreme Court in *Metropolitan Life Ins. Co.* v. *Howle,* 62 Ohio St., 204, 207, 56 N. E., 908, 909, wherein the court said:

"Sound health as used with reference to life insurance, means that state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, and not a mere indisposition which does not tend to weaken or undermine the constitution of the assured. The word 'serious' is not generally used to signify a dangerous condition, but rather a grave or weighty trouble."

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE, J., concurs.

VICKERY, J., not participating.