FIRST TRUST CO. OF ST. PAUL et al. v.
KANSAS CITY LIFE INS. CO.
No. 10276.

Circuit Court of Appeals, Eighth Circuit.
Aug. 22, 1935.

49

Samuel Lipschultz, of St. Paul, Minn. (Harry Weiss, of St. Paul, Minn., on the brief), for appellants.

George D. McClintock, of Minneapolis, Minn. (George Hoke, Chester A. Marr, and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellee.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

STONE, Circuit Judge.

Appellants, as executors of Clarence E. Bergman, brought an action against appellee to recover on a policy insuring the life of Bergman. At the close of all the testimony the trial court directed a verdict for defendant. This is an appeal from the judgment entered on that verdict.

The defense to the action was that the policy was issued upon an application for insurance which contained certain pleaded willfully false statements as to the health and medical treatment of insured. The issues here have to do with the admission of evidence except as to the matter treated last hereinafter.

I. The Application.

Appellants contend that the court wrongfully admitted the original application and a photographic copy thereof attached to the policy. The basis of this contention is that the application was a part of the policy within the meaning of a state statute requiring the "form of policy" to be filed with and approved by the Commis-

sioner of Insurance before contracts of insurance could be written in the state and that this form of application had not been so filed. The state statute is as follows: "No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, until the form of the same has been filed with the insurance commissioner; and after the insurance commissioner shall have notified any company of his disapproval of any form, it shall be unlawful for such company to issue any policy in the form so disapproved. The commissioner's action shall be subject to review by any court of competent jurisdiction." Mason's Minn. St. 1927, § 3408.

It is undisputed that no form of application had been so filed with the commissioner by appellee although a form of policy had been. The application in question contained not only questions and answers as to the family history, physical condition, and habits of the insured, but also other provisions affecting the terms of the possible contract between the parties. When the application was offered in evidence and objection covering the above contention was made, the court ruled that the portion of the application containing the questions and answers and the signature of the insured were admissible and that the other portions were not admissible. Appellant complains of the admission of those parts of the application consisting of the questions, answers, and signature.

Appellants contend that the application is one document and indivisible; that the entire form was one which should have been filed under the statute; and that if any portion of the application is invalid because not filed, the entire instrument is affected by this vice and must be nullified.

That a document affecting a life insurance contract, which document contains both matter coming within this statute and matter not coming within it, admits of a judicial segregation of the good portion from the bad has been determined by the Supreme Court of Minnesota on a construction of the above section of the statute in Coughlin v. Reliance Life Ins. Co., 161 Minn. 446, 453, 201 N. W. 920. That case involved a premium note which contained provisions affecting terms of the contract which terms were no part of the policy form filed with the commissioner. The court there determined that the provisions in the note which affected the terms of the policy were invalid, but that they were separable from those terms applying only to the note and sustained the note. This case would seem to be direct authority to the effect that where the two portions of the document are capable of proper separation such can be accomplished within the terms of the statute. Such separation can be properly accomplished in the application before us. The part of the application containing the questions, answers, and signature of insured can be completely and effectively segregated from the remainder of the application without legal damage. The trial court was right in determining that this separation could be made. The question remains whether the portion of the application admitted by the court should have been filed under the statute.

▮ The word "policy" as applied to insurance may be an ambiguous term. It may mean the entire contract between the parties, or it may mean that part of the contract excluding attached papers which define none of the terms of insurance. The statutes of Minnesota recognize this distinction. In section 3402, Mason's Minn. St. 1927, which sets forth provisions which must be included in every policy, is a requirement that "a provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and *a copy of such application shall be endorsed upon or attached to the policy when issued.*" The just-quoted provision makes a distinction between the policy and the application and requires a copy of the application to be indorsed upon or attached to the policy. With this statutory recognized distinction in mind it would seem clear that section 3408, requiring filing and approval of the form of "policy," was not intended to include the form of application, at least in so far as that application maintained its true character as such. The practical reasons for such are not difficult to discover. A policy of insurance is supposed to contain a statement of the rights and obligations of each of the parties thereto. Having this character and considering the advantage of insurers in defining such rights and obligations and further considering the important place in modern society of life insurance, it might well be that the state would want

to protect the policyholders from unfair conditions in policies by requiring the form thereof to meet the approval of a public official.

██ The application occupies an entirely different place in the transaction. It is one among other antecedent dealings between the insurer and the insured which may ultimately result in the making of a contract of insurance, which contract is the policy itself. Its normal and true function is as a proposal to enter into an insurance contract with the setting forth of information thought material by the insurer to enable it to determine the desirability of making such a contract. That such is the character of an application for insurance has been directly declared by the Minnesota Supreme Court [Schwartz v. Germania Life Ins. Co., 18 Minn. 448, 455 (Gil. 404); Heiman v. Phoenix Mut. Life Ins. Co., 17 Minn. 153, 157 (Gil. 127), 10 Am. Rep. 154], by this court [McNicol v. N. Y. Life Ins. Co., 149 F. 141, 143; Travis v. Nederland Life Ins. Co., 104 F. 486, 488], and by other federal and state courts [Mutual Life Ins. Co. of N. Y. v. Hilton-Green, 202 F. 113 (C. C. A. 5); Miller v. Northwestern Mut. Life Ins. Co., 111 F. 465, 468 (C. C. A. 4); Witten v. Beacon Life Ass'n, 225 Mo. App. 110, 33 S.W.(2d) 989, 991, and see Brancato v. National Reserve Life Ins. Co., 35 F. (2d) 612 (C. C. A. 8); Steinle v. N. Y. Life Ins. Co., 81 F. 489 (C. C. A. 5)]. While there are good reasons for a state control of the terms and conditions of an insurance contract, yet the entrance into such contract is an entirely voluntary matter. Whether an insurer will enter such a contract with a particular person depends upon a situation which must appear satisfactory to the insurer. Naturally, the situation in every instance must be developed by such information as seems to the particular insurer to be necessary or useful. Not only is this self-evident, but the statutes of Minnesota directly recognize this situation in section 3396, which applies to statements made in an application "without previous medical examination." The application is one of the customary methods of acquiring desirable information from the insured himself in respect to matters deemed important by the insurer and concerning which the insured would have knowledge. When this character of the usual and true application is considered, very good reasons are found why the state should have little interest in limiting or regulating true applications although abundant reasons can be found for regulation of the rights and obligations of the contract into which the parties may enter. In this situation, the section of the statute here involved should be construed as not including such parts of an application as are confined to the acquirement of information upon which the insurer is to determine the desirability of the contract.

## II. Testimony of the Dietitian and the Nurse.

A part of the application for this insurance is dated August 10, 1932, and therein the insured stated that he was then "in good health and free from every disease and infirmity." Another part of the application contained declarations made to the medical examiner of insurer, was signed by the insured, and dated September 27, 1932. This contained his statement, in effect, that except for a skin infection he had not consulted or been treated by any physician for any ailment or disease. In support of its proof of actual fraud, appellee placed several witnesses on the stand for the purpose of showing that insured had been treated for diabetes at the Mayo Clinic at various times during 1932 and before his application was sent to the company. Among these witnesses was Dr. Pollock, who testified from the Clinic records that insured was there on the 23d of March, the 5th of April, 5th of May, 14th of June, 9th of August, 30th of August, all in 1932. An objection to a question asking the diagnosis made as to the insured was sustained, beyond permitting the witness to state that a diagnosis had been made and that at that time the insured had a disease. An offer to prove by this witness what the disease was was excluded.

Appellee also introduced the testimony of a dietitian and of a professional nurse, both employed at the Kohler Hospital, which was one of the institutions apparently not owned by the Mayo Clinic but where its patients were treated under instructions given by physicians belonging to the Clinic. The dietitian testified that she carried out the instructions of the Mayo Clinic physicians in regard to diet and in 1932 was taking care of diabetic patients. She testified that in 1932 insured was a member of her "diabetic class" and, as such, his diet was regulated under her supervi-

sion and insulin was given to him from one to three times a day during the time he was under her charge. Also, she testified that insured had consulted with her concerning his diet. This treatment was from March 28, 1932, to April 5, 1932. The nurse testified that, during this same period, she was working in the diabetic kitchen at the hospital; it being her duty to help with the preparation of specific foods for diabetics and to give insulin to such patients. During that period she administered insulin to the insured two or three times a day. She identified a record made by her showing the amounts of insulin so administered.

 This evidence of the dietitian and of the nurse is objected to as privileged under the state statute (Mason's Minn. St. 1927, § 9814, subd. 4) which reads as follows: "A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity and which was necessary to enable him to act in that capacity."

At common law, communications between physician and patient were not privileged. O'Brien v. General A., F. & L. Assur. Corp., 42 F.(2d) 48, 51 (C. C. A. 8); Culver v. Union Pac. R. Co., 112 Neb. 441, 199 N. W. 794, 796; Myers v. State, 192 Ind. 592, 137 N. E. 547, 549, 550, 24 A. L. R. 1196. In so far as such privilege exists it does so in accordance with statutory requirement and the statute involved is that of the state where the action is tried (Conn. Mut. L. Ins. Co. v. Union Trust Co., 112 U. S. 250, 253–256, 5 S. Ct. 119, 28 L. Ed. 708; Mutual Benefit L. Ins. Co. v. Robison, 58 F. 723, 730–732, 22 L. R. A. 325 [C. C. A. 8])—in this instance the above section of the Minnesota statutes.

 This section, by its language, confines the privilege to "a licensed physician or surgeon" and does not expressly include nurses or others who administer treatment under direction of such physician or surgeon. The contention of appellants is that the statute should be construed to include such persons in order to give it full effect to protect the privilege intended by the statute. We are thus asked to construe the legislative intent as including not only the specific persons designated in the statute but also those so associated with them in regard to the privileged matter as to give them at least some knowledge of the ailment under treatment. If the question, as thus presented by appellants, were all there were to the matter, there would be considerable force in this contention and statutes of other states upon this same subject have been held to cover nurses, at least in so far as their knowledge was gained from the physician or while attending in the immediate presence of the physician (Culver v. Union Pac. Ry. Co., 112 Neb. 441, 199 N. W. 794; Meyer v. Russell, 55 N. D. 546, 214 N. W. 857, and Miss. Power & Light Co. v. Jordan, 164 Miss. 174, 143 So. 483), atlhough there is some authority to the contrary (Wills v. Nat. Life & Accident Ins. Co., 28 Ohio App. 497, 162 N. E. 822, 824). But this subsection of this statute is a part of a section generally treating of "competency of witnesses" and must be construed as affected by other provisions of the section. This section (section 9814) reads: "Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows," which is followed by six subdivisions relating to different matters. The first subdivision deals with husband and wife and names them alone. The third subdivision (amended by Laws 1931, c. 206, § 1) deals with clergymen and names them alone. The fourth subdivision (the one here involved) deals with licensed physician or surgeon and names them alone. The fifth subdivision deals with a public officer and names him alone. The sixth subdivision has to do with persons incapacitated by insanity, intoxication, or otherwise. The second subdivision deals with attorneys, but is not confined to them alone, containing the language "nor can any employee of such attorney be examined as to such communication or advice, without the client's consent." Consideration of this entire section, which was enacted as a whole, reveals that persons are to be witnesses in all cases except as therein set forth. Among these exceptions are five where the exception is based upon a privileged relation. In all of these except that dealing with attorneys the privilege is definitely limited to husband and wife, clergyman and parishioner, physician and surgeon and patient, and public officer; while as to attorney and client, it is specifically stated that the privilege shall be extended to cover "any employee." It is significant that subdivision 2 (as to attorney and client) is the only one in which there is an extension of the privilege to those out-

side the privileged relation who might normally acquire knowledge in connection therewith, and also it is significant that as to physicians and surgeons there is no such extension to similar persons such as nurses. Appellee argues, and it seems with telling force, that when the entire section is considered it should not be said that the Legislature overlooked an express extension of subdivision four to cover nurses, dietitians, and others connected with the treatment of a patient under the supervision of a doctor, or that it intended such an extension by the language used. In the only case determined upon a like statutory situation, the Circuit Court of Appeals of the Ninth Circuit held it would be judicial legislation to construe such a provision in the California Code to cover nurses. Southwest Metals Co. v. Gomez, 4 F.(2d) 215, 39 A. L. R. 1416. The well-reasoned opinion of Judge Rudkin in that case is convincing. Appellants contend that the Gomez Case has been virtually overruled by an expression in Wolfle v. United States, 291 U. S. 7, at page 16, 54 S. Ct. 279, 78 L. Ed. 617; but the expression there used was employed merely as an illustration and the case itself involved no such statutory provisions as subdivision 2 of this section 9814. In the Wolfle Case the question involved was whether the testimony of a stenographer who had taken dictation of a letter from a husband to his wife would come within the privileged status. In passing thereon, the court made casual observation about the relation of physician and nurse. This contention must be ruled against appellants.

### III. Evidence of Medical Director.

 Appellants urge error in the admission of testimony by Dr. Baker, appellee's medical director, to the effect that he would have declined the risk had he known of assured's treatment at the Mayo Clinic. The contention is that this was the expression of an opinion on an issue which was for the determination of the jury. Appellee argues that the admissibility of this testimony is not the issue, but whether the statements made in the application were intentionally fraudulent.

As to the inadmissibility of the testimony, appellants rely upon Mack v. Pac. Mut. Life Ins. Co., 167 Minn. 53, 208 N. W. 410, and Domico v. Metropolitan Life Ins. Co., 191 Minn. 215, 253 N. W. 538. These two cases do not rule the point. In the Mack Case the answers in the application, which were urged by the insurer as being intentionally fraudulent and material, were as to trivial ailments, and in that situation the court held that the intent to deceive was a question for the jury. In that connection the court stated (167 Minn. 53, 208 N. W. 410, page 412): "The proper practice in the trial of the question, as to whether the insurer would have issued the policy had it known the true facts, is to permit the witnesses to disclose the facts, and the trier of fact will decide. In this case some of the witnesses were asked whether, if they had known the true facts, a policy would have been issued. Such question calls for an answer which is the ultimate question of fact to be determined by the jury. This practice is not commendable." This quoted statement hardly goes to the length of holding that it is reversible error to permit testimony of this character.

The Domico Case did not involve this point, although it cited the Mack Case upon another issue. Opposed to this statement in the Mack Case, is that by the same court (delivered less than a year before the Mack Case) wherein such testimony was received and acted upon by the Supreme Court without unfavorable comment. In that case (Flikeid v. N. Y. Life Ins. Co., 163 Minn. 127, 203 N. W. 598, 599) the court said: "There is testimony in the record, given by officers at the home office, to the effect that, had the questions been answered in accordance with the foregoing testimony as to the conditions of the insured, and his actions with reference thereto, such as Dr. Andrews related, the policy would never have been issued." The same character of testimony was regarded as proper and material by this court in Mutual Life Ins. Co. v. Hurni Packing Co., 260 F. 641, 645.

Although the admissibility of this testimony has been considered, the admission of it would not constitute reversible error even if it were error because the issue here is not one of fact but one of law. That issue of law is whether the evidence conclusively established the intentional fraud of the insured in the false statements contained in the application. That these statements were false, were material, and were intentionally false is clearly and indisputably established by this record. The insured was a man of relatively large business affairs and must have known that the only purpose of the insurer in acquiring in-

formation concerning his history, health, and habits was to enable it to determine whether it would issue a policy. It is impossible to think that he could forget these treatments which took him away from his home and to a clinic, and all of which occurred within a few months and one of which the day before the application, and which were continued, even to a visit made between the signing of his first application and the medical examination—the latter containing one of the false statements. He could not have regarded a diabetic ailment as so trivial that an insurer would not want to know about it. The only possible rational explanation of his conduct is that he willfully made the false statements for the purposes of concealing the facts and of deceiving the insurer so that he might procure a policy which, if this truth were known, might be refused. In this situation of fact the only question is one of law and that is easy of solution. The law is that where the insured, in his application, intentionally makes a false statement about a material matter, the policy may be avoided. Mut. Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 S. Ct. 676, 60 L. Ed. 1202; Mutual Life Ins. Co. v. Hurni Packing Co., 260 F. 641 (C. C. A. 8); Domico v. Met. Life Ins. Co., 191 Minn. 215, 253 N. W. 538, 541; Mack v. Pac. Mut. Life Ins. Co., 167 Minn. 53, 208 N. W. 410, 412; Flikeid v. N. Y. Life Ins. Co., 163 Minn. 127, 203 N. W. 598, 599. Also, even if this evidence be regarded as merely the expression of an opinion and not the recital of facts and ever if the admission thereof was erroneous, it would not constitute reversible error, since the case was never submitted to the jury for its independent decision but the verdict was directed.

IV. Another contention of appellants is that the original and the photographic copy of the application were inadmissible because the copy attached to the policy was not readily readable by a man fifty-one years of age, of normal eyesight, under normal conditions, with reasonable ease. The argument is that the state statute requires a copy of the application to be attached to the policy and that this means a copy which is "readily readable by a person with normal eyesight, under normal conditions." In some states there exist statutory requirements as to legibility of all portions of the contract of insurance, but there is no such statute in Minnesota. Under the clear facts here, however, it is not necessary to determine whether the absence of such a readable copy would be a compliance with the statute since the copy attached to this policy was of that readable character.

A companion contention is that the court improperly excluded an offer to prove by an optometrist that this copy was not readily readable by a man fifty-one years of age, of normal eyesight, under normal conditions, with reasonable ease. In sustaining the objection to this line of inquiry, the court (who was much older than the insured) stated: "It seems to me that the question of whether this is readable or not is not a question for an expert to say. I think that the normal eye can read it; I can read it very plainly and I think any member of the jury can." The trial court was entirely right in determining that this was not a matter for expert testimony. There was nothing which an optometrist could properly add to the information as to the legibility of this application which the court and jury would not acquire by inspection thereof.

V. A last matter which is argued by appellants is that the case should have gone to the jury to determine whether insured made the statements in the application because the evidence as to his having made them rests entirely upon the testimony of the survivor to a transaction with a decedent. It is true that there are situations where even uncontradicted evidence by a party, the only other witness being dead, may require submission to a jury; but the situation here is not of that character. These statements were contained in different parts of an application, both parts being signed by the insured and attached to the policy delivered to him and upon which this action is based. Mutual Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202.

The judgment below must be, and is, affirmed.