## LOUISE E. BLACK v. CENTRAL BUSINESS MEN'S ASSOCIATION.[1]

March 13, 1925.

No. 24,297.

**Waiver of proof of claim.**

1. Evidence considered and *held* to show a waiver of proof of claim under an insurance policy.

**Question for jury.**

2. The evidence justified the submission to the jury of plaintiff's right to recover.

**Evidence inconclusive.**

3. The evidence is not conclusive that respondent was suffering from a venereal disease at the time of making the application for the policy.

**Question for jury.**

4. The evidence made a question for the jury as to whether the paralysis with which respondent was afflicted was caused solely by the gunshot wound inflicted upon her.

**Charge to jury.**

5. We find no reversible error in the charge of the court to the jury.

\*Headnote 1.  See Insurance, 33 C. J. p. 128, § 860.
Headnote 2.  See Insurance, 33 C. J. p. 130, § 863.
Headnote 3.  See Accident Insurance, 1 C. J. p. 509, § 338.
Headnote 4.  See Accident Insurance, 1 C. J. p. 509, § 337.
Headnote 5.  See Appeal and Error, 4 C. J. p. 1130, § 3122.

Action in the district court for Hennepin county. The case was tried before Montgomery, J., and a jury which returned a verdict for the amount demanded with interest. From an order denying

[1]Reported in 202 N. W. 823.

its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*A. V. Rieke*, for appellant.

*Walter H. Hennessey*, for respondent.

QUINN, J.

This is an action to recover $1,000 on a policy of health and accident insurance, issued by the defendant on August 26, 1921, to the plaintiff. There was a trial where a verdict for $1,000 was returned. From an order denying its motion for judgment or for a new trial, defendant appealed.

The plaintiff bases her right of recovery, under the policy, upon injuries which she sustained on December 8, 1921, by reason of a gun-shot wound, received at the hands of one Clarence Hefter. To the complaint are attached copies of the application and the policy. The application is dated July 8, 1921.

The answer contains 25 folios of solid matter in which it is pleaded, as a defense to plaintiff's right to recover herein, that, in her application for the policy in question, plaintiff stated that she was physically sound, which statements were false and of such a character as to void the policy from its inception. It was upon this theory that the defendant returned to the plaintiff the amount of the premiums she had paid and upon which the defense was made at the trial and upon this appeal.

On the night of December 8, 1921, plaintiff left the door of her apartments unlocked when she retired. At about 4:30 o'clock in the morning, Clarence Hefter went to her apartments in a considerably intoxicated condition. He opened the door and walked into her sleeping room, against her protest, and insisted that she take a drink from a bottle of wine which he brought with him. She refused and directed him to leave the room. An altercation followed in which he told her to shut her mouth or he would shoot her. He had a 38 caliber revolver in his hands which was immediately discharged, the shot taking effect on the left side of plaintiff's neck, fracturing two vertebrae, and coming out about an inch to the right of her spine. Soon the landlady and others appeared. Later the officers came. Hefter was placed under arrest.

Plaintiff had taken some morphine. She made statements as to how the shooting occurred, which were inconsistent with her testimony at the trial. She was removed to the general hospital. She remained for one week, and was then removed to the deaconess hospital where she remained three weeks. While at the general hospital an X-Ray picture was taken and other examinations made and records kept. On December 15 Dr. Carl A. Witham, a physician and surgeon of admitted qualification, saw and examined plaintiff and treated her after she went to the deaconess hospital. He testified that, when he first saw and examined plaintiff, he found a wound on the left side of the neck, a little to the right of the median line in the back, and her left arm was completely paralyzed; that he examined the records of the hospital and the X-Ray picture; that the X-Ray picture showed fractures of the vertebrae, the fourth and fifth cervicals, sufficient to account for the condition of the arm; that he made further examinations at the deaconess hospital as to the patient's general condition; that, because of the reports he had from the general hospital, he caused a blood test to be made; that he treated the patient from December 15 until February; that the treatment which he prescribed for her and which she took was rest, massage of the arm, and a tonic; that she was badly run down; that the laboratory report showed a 2-plus Wasserman and she was under treatment for that.

It is contended by appellant, in its brief, that plaintiff failed to make out a case; that no proof of loss had ever been furnished; that, at the close of the trial, defendant was entitled to a directed verdict because it conclusively appeared that, at the time of making application for such insurance, plaintiff was afflicted with a venereal disease so as to void the policy; that she was so afflicted at the time of her injury; that her disability was not due solely to the accident; that the court erred in its instructions to the jury and that the verdict is not sustained by the evidence.

As bearing upon the contention that respondent failed to furnish proof of claim, it may be observed that, on March 31, 1922, appellant wrote a letter to the respondent, in part as follows:

"Some time ago you presented claim on account of accidental injury which claim has been under investigation. From the information furnished by you and from our investigation, it appears that there was a misrepresentation in the application for your policy which voided the policy from the date of issue.

You stated that you were in sound physical condition when as a matter of fact you were not, and you also misrepresented the extent and nature of the disease from which you had suffered prior to the date of the application. Under the circumstances, of course, your policy was void from its inception and was never in force. We are therefore enclosing our check for $29.87, together with 6 per cent interest, being the entire amount of premiums paid by you on policy No. 1801529, cancelling and rescinding same from date of issue, and in full of all claims of whatsoever name or nature."

This letter amounts to a clear denial on the part of the insurer of liability on grounds other than a failure to furnish notice of proof of loss and is a waiver of such failure. Kearns v. North American L. & C. Co. 150 Minn. 486, 185 N. W. 659; Zeitler v. National C. Co. 124 Minn. 478, 145 N. W. 395; Johnson v. Bankers Mut. C. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Am. Cas. 1916A, 154.

The appellant insists that it was entitled to a directed verdict for the reason that it conclusively appeared that the insured was afflicted with a venereal disease on July 8, 1921, when she gave her application for the policy, so as to void the policy. We do not concur in that contention. We have only to deal with the evidence as shown by the record. Doctor McLaughlin, called by the appellant as an expert witness, testified, upon cross-examination, that it is possible for the disease, with which the respondent was afflicted, to develop in less than six months; that it was the exception, but he had seen that disease develop in five months; that he had never examined the insured, but had seen some reports from the hospitals. The insured testified, upon cross-examination, that, to her knowledge, she had never had any such disease; that she heard the testimony as to the symptoms of the first and second stages of the disease,

with which it is claimed she is afflicted, and that she has never, at any time, had such symptoms.

Doctor Witham was the only physician who had examined plaintiff who testified, as a witness, upon the trial. He testified that he had known her for a number of years; that he first saw her, as a patient, at the general hospital on December 15, 1921; that she was shot through the neck; that the bullet had broken the transverse processes of the fourth and fifth cervical vertebrae; that he treated her until in February following, and that he looked after her during the spring and summer; that, during that time, she was still paralyzed in the left shoulder and arm; that he saw her a time or two afterwards and that she was still showing paralysis, though there was a slight improvement; that this was during the summer of 1922. Upon cross-examination, the doctor testified that the X-Ray pictures showed sufficient injury to account for the condition of the arm; that the wound had healed when she left the hospital; that, from the report of the laboratory man, she had a 2-plus Wasserman, and she was treated for that; that he could not say how long she had it; that he had seen that disease killed in three months from the initial lesion, then again it may last for years. On redirect examination, the doctor testified that he would say the paralysis in this case was due to the gunshot wound; that the Wasserman test is not always accurate—we feel as if we want more than a Wasserman test, the test is simply confirmatory where we find other evidence of the disease.

The policy under consideration provides that, if such bodily injuries, independently and exclusively of all other causes, wholly and continuously disabled the insured from the date of accident from performing any and every kind of duty pertaining to her occupation, for one day or more, then, the association would pay a monthly indemnity, at the rate specified, so long as the insured suffers such total disability. It is not questioned but what the insured received the gunshot wound at the time she claims and that paralysis of the left shoulder and arm followed. We find no positive evidence in the record that the disease, which it is claimed respondent was afflicted with, contributed to the paralysis. The experts who testi-

fied in the case had never examined her. Doctor Witham, who treated her and observed her during the winter and the following summer, testified that, in his opinion, the paralysis was due to the gunshot wound; that the wound was healed when she left the hospital; that he was not able to say that the case was tertiary syphilis or how long the patient had had it. There is plenty of room for conflict upon the proposition whether the insured was actually afflicted with the disease, and, if so, whether it contributed to the paralysis, and also, as to its duration, that is, whether the insured was so afflicted at the time of making the application for the insurance. These were matters for the jury under the proofs. In arriving at this conclusion, we have not overlooked the many decisions cited on behalf of appellant.

Whether the disease contributed to the disability complained of, or whether it was attributable to the gunshot, was fully submitted to the jury. By its verdict, these matters were resolved in favor of the plaintiff and against the contention of the appellant. Its finding thereon, under the evidence, is final. The court instructed the jury that, if the representations, made by the plaintiff as to her state of health at the time she made application for the policy, were not true, then their falsity voided the policy as a matter of law. The jury was further told that, if the plaintiff, at the time the application was made, was infected with the disease of syphilis, then her representations were untrue and the risk of loss to the insurance company was increased and the misrepresentations voided the policy, regardless of the intent with which they were made.

Plaintiff had some injury and consequent disability coming from her gunshot wound "independently and exclusively of all other causes" within the policy. The court charged, in effect, that the question was whether the plaintiff was diseased at the time of the policy. It may be that there is enough evidence to go to the jury on the question whether a disease, with which she was afflicted, later interrupted the recovery or prolonged her paralysis. The evidence was very weak, but, in any event, there was no objection made to the submission of the one question as the only question in the case. At the argument defendant's counsel said something

about being called away by illness, perhaps of his father, and that he was not present when the charge was delivered, but anyway, with evidence so slight of a contribution of subsequent disease, a new trial should not be granted when the ground of the recovery was definitely stated and no objection taken.

Affirmed.