CHARLES L. JENSVOLD v. MINNESOTA COMMERCIAL MEN'S ASSOCIATION.[1]

November 9, 1934.

No. 29,996.

---

[1] Reported in 257 N. W. 86.

*A. V. Rieke, Bonita F. Rieke,* and *Maurice H. Rieke,* for appellant.
*Daly & Barnard* and *Richard H. Bachelder,* for respondent.

*I. M. OLSEN, Justice.* ,

Defendant appeals from an order denying its motion for a new trial. Joined with the motion for a new trial were a motion for judgment notwithstanding the verdict and a motion for a reduction of the amount of the verdict to $250.

Defendant is an incorporated mutual association providing accident insurance for its members on the assessment plan. Plaintiff became a member of the association on October 16, 1929, and a certificate of membership constituting the contract between the parties was issued to him on that date. He paid all dues and assessments and remained a member in good standing. On May 7, 1932, he suffered an accidental injury to his left eye which he claims resulted, within 90 days thereafter, in the permanent loss of the sight of that eye. He made claim and presented proof of loss. Defendant denied liability, and this· suit followed. Plaintiff recovered a verdict for $1,250 and interest, and, after denial of its motion above noted, defendant took this appeal.

Recovery was had under the provisions of the by-laws of the defendant, made a part of the membership contract, section 5, article 7, reading as follows:

"Any member of this association in good standing who shall, by virtue of his application for membership in this association and the certificate of membership issued thereon, be entitled to indemnity under this article and who shall sustain any of the following specific losses which shall result from bodily injuries as described in Sec-

478

tion 2 of this Article, within ninety days from date of accident, shall be paid in lieu of all other indemnities, but in no event in a sum greater than $5,000.00 for any one injury, as follows:"

Then follows a table of amounts for loss of life and specified bodily members, ending with: "For loss of * * * Entire sight of one eye (if irrecoverably lost) $1,250."

■ The assignments of error and argument present several questions or points. Leaving for the present the first two assignments of error, that the court erred in denying defendant's motion to dismiss the case and its motion to direct a verdict in defendant's favor, and the third assignment that the court erred in denying the motion to reduce the verdict to $250, we come to assignments 4 and 5, charging, in substance, that the court erred in refusing to instruct the jury that it appeared from the evidence as a matter of law that the plaintiff, in his application for membership, had made material false statements as to his hearing and sight being then not impaired, and that he had not been disabled by either accident or illness and had received no medical or surgical attention during the last three years; that, therefore, the contract based on such application was void and the verdict must be for defendant. These are requests numbered 2 and 3.

The court in its charge had submitted to the jury the question of whether any material false representations had been made by plaintiff in his application. No exceptions were taken to the court's charge on that issue, either at the close of the charge or in the motion for a new trial, and there are no assignments of error here as to that part of the charge. It is difficult to see how the question can be raised by assigning errors on the refusal of the court to give contrary instructions on a matter clearly covered in the general charge of the court, without objection or exception to the charge on that subject. But, passing that, the evidence presented to show false statements in the application and their materiality was not conclusive, and the question was for the jury. The court did not err in refusing to give requests numbered 2 and 3, or either.

■ Assignment of error No. 6 is that the court erred in refusing to give defendant's request No. 5. The by-laws and contract provide:

"Written notice of injury or of sickness on which claim may be based must be given to the association within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness."

The request to charge was that the jury must return a verdict for defendant because the evidence showed that plaintiff did not give notice of the injury to the eye within 20 days after the date of the accident. The first notice that plaintiff had a claim under his policy was by letter written May 31 and received by defendant June 1, requesting blanks to make out claim. This notice did not specify the injury, and defendant requested further information. On June 4 plaintiff wrote another letter, received by defendant June 7, stating his injury was to his left eye and back. Defendant then sent blanks, and same were filled out and sent to defendant and received by it June 13. Defendant, on receiving the proofs of injury, made no objection thereto on account of the notice not being received in time. Under date of July 18 it wrote plaintiff that a thorough investigation of his claim with reference to loss of sight of eye was being made, and that, upon completion of the investigation, he would hear from them. On July 26 defendant wrote to plaintiff that it had decided to terminate his membership as of that date. Finally, on August 1, approximately two months after it had received notice of the injury, it wrote a letter, signed by A. V. Rieke, as adjuster, by order of its board of directors, stating that investigation indicated that plaintiff had no disability and no loss of sight except such as he had for some years prior to the claimed accident, and that he had as much sight in his left eye after the accident as he had for years before; that his claim, therefore, was invalid and stood rejected. There is no suggestion or claim in this letter that the notice of injury was not received in time. The question of timely notice was submitted to the jury as well as the question of waiver. A finding by the jury that notice within 20 days after the accident was waived would be sustained by the evidence, and the court did not err in refusing to give the requested instruction No. 5.

■ One other point is raised on the question of notice. It is assigned as error that the court instructed the jury, in substance, that if, at the time of the accident, there was no reasonable ground for believing that bodily injury would result therefrom, then under those circumstances plaintiff would have, or be allowed, the specified time named in the contract for giving notice, after he knew that bodily injury might follow as a result of the accident. The instruction is in harmony with our decisions. Jensvold v. Provident L. & A. Ins. Co. 191 Minn. 122, 253 N. W. 535, and cases there cited, and Western C. T. Assn. v. Smith, 29 C. C. A. 223, 85 F. 401, 40 L. R. A. 653. It seems to be a fair construction of the provisions of the policy contract. The contract does not require notice of a mere accident. It requires "written notice of injury or of sickness on which claim may be based." Such notice cannot be given until the sickness commences or the injury can be reasonably anticipated or known. The evidence here shows that for some time after the accident neither the plaintiff nor the attending physician knew or anticipated that loss of sight or serious injury to the eye would result. The defendant protects itself in its policy contract by limiting its liability to losses which shall result within 90 days from the date of the accident.

■ The next claim urged is that the court erred in refusing to give the requested instructions Nos. 6 and 7. These requested instructions have reference to the claim that the loss of sight in the eye was caused by septic infection. The contract provision in section 3 of article 7 thereof is that if septic infection developing from an injury shall, within 90 days from beginning thereof, result in loss of one eye, there shall be paid to the member suffering such loss $250. In request No. 6 the court was asked to instruct the jury that it conclusively appeared from the evidence that septic infection developed from plaintiff's injury and that their verdict must be for $250 if they found for plaintiff. It is sufficient here to say that the evidence of plaintiff's attending physician, as well as his own, made the question of septic infection a jury question, although two medical witnesses for the defendant, called as experts, gave their opinion, based on the evidence at the trial, that there

had been septic infection in the eye. There was no error in refusing to give the request. See in this connection Western C. T. Assn. v. Smith, 29 C. C. A. 223, 85 F. 401, 40 L. R. A. 653.

■ Request No. 7 was, in substance, a request to instruct the jury that, if they found from the evidence that septic infection developed in the eye from the injury and resulted in the loss of the eye, then the verdict must be in the sum of $250. The court had quite fully charged the jury on this question and had charged them that if they found that the loss of the eye was directly brought about and occasioned by septic poisoning then plaintiff would be entitled to recover $250, if they found he was entitled to recover in the case. The charge as given on this issue was not excepted to at the trial or in the motion for a new trial or assigned as error here. The request was sufficiently covered by the general charge, and the court did not err in refusing to give the request.

Our holdings on these two requests to charge next above noted dispose also of assignment of error No. 3, that the court erred in denying defendant's motion to reduce the verdict to $250.

■ Assignments of error Nos. 1 and 2, that the court erred in denying defendant's motions to dismiss and to direct a verdict, need no further extended consideration. There was evidence to go to the jury and to sustain the verdict rendered.

■ It is urged that the provisions of section 5 of article 7 of the by-laws and contract, providing for indemnity of $1,250 for loss of sight of one eye resulting from bodily injury in an accident within 90 days of the accident, must be held to be qualified or controlled by section 2 of said article, providing:

"For disability due to external, violent and accidental means of which there shall be external and visible evidence and which shall, independently of all other causes, immediately, wholly and continuously disable him from performing any duty pertaining to his occupation, he shall be paid at the rate of $25.00 a week," etc.

In other words, the claim is that, before a member can recover for loss of sight resulting within 90 days after the accident, he must show that the accident immediately, wholly and continuously dis-

abled him from performing any duty pertaining to his occupation. There was in this case violent and accidental means of which there was external and visible evidence. It is clear, reading the two sections together, that it is not required, in order to recover under section 5, that there shall be total disability to perform any duty of the claimant's occupation immediately from the time of the accident. The two sections treat of different and distinct indemnities, one for immediate total disability, the other for loss of life, hands, feet, and loss of eyesight, resulting within 90 days after the accident.

■ It is assigned as error that the court erred in denying the motion for a new trial on the ground of newly discovered evidence. While not orally argued, defendant's counsel earnestly ask consideration and disposition of all errors assigned. Three affidavits were presented, on the motion, from three persons residing at Granite Falls, Minnesota, where plaintiff resides, that they had seen a grayish spot over a part of plaintiff's left eye, continuing there for many years prior to the accident. It is sufficient to say as to this alleged newly discovered evidence that, by its letter to plaintiff, by its adjuster before mentioned, under date of August 1, 1932, defendant stated that, as indicated by its investigation, plaintiff had no loss of sight "except what you have had for some years. The cataract that appears on your left eye is of long standing, of which we have absolute proof from numerous persons. * * * as far as your left eye is concerned, you have as much sight as you have had years before." The answer, by denial, raised the issue as to whether the loss of sight was caused by the accident. Defendant claimed it had "absolute proof" on the issue as early as August 1, 1932. The affidavit of defendant's counsel does not show any effort or attempt to discover the evidence before the trial in October, 1933, now claimed to be newly discovered. The first place that would suggest itself for obtaining evidence on the issue would be where these witnesses resided and where plaintiff resides and has resided for many years. The trial court was fully justified in denying a new trial on this ground.

Order appealed from is affirmed.