# HARNISCHFEGER SALES CORPORATION v. NATIONAL LIFE INSURANCE COMPANY.[1]

June 21, 1935.

No. 30,430.

[1]Reported in 261 N. W. 580.

32

A. W. *Coppin*, *John F. Bonner*, and *Junell, Driscoll, Fletcher, Dorsey & Barker*, for appellant.

*H. V. Mercer*, for respondent.

LORING, JUSTICE.

This was an action by the assignee of a $30,000 insurance policy on the life of Alexander William Hog, who died June 10, 1933. The insurance contract was completed March 6, 1933, by the delivery of the policy. The defenses set up were that the insured was in bad health when the policy was delivered and that by fraudulent concealment and misrepresentation of material facts he had misled the defendant and induced it to enter into the contract. In his application for insurance Hog denied ever having been at a hospital for treatment, observation, or diagnosis. He admitted that he had sought professional advice as to his health and had been treated by Dr. Herman Kesting in August, 1932, for indigestion due to overeating, but stated that he was well of this illness, which lasted but two days, with "no pain, just nausea, vomiting one night." The facts were that on this occasion a Dr. Pollock had also been called in and had attended the insured professionally on August 28, 29, 30, 31, and September 1, when he had seen him twice the first day, three times the second day, once the third day, once the fourth day, and once on September 1. He saw Hog again on September 6 in the Asbury Hospital, where a cardiogram was taken of his heart action. Hog was in bed for several days while Dr. Pollock was attending him, but on September 8 he went to Dr. Pollock's office. Upon plaintiff's objection the doctor was not allowed to testify as to the ailment from which Hog was suffering. While Hog was in bed under the care of Dr. Pollock certain medicines were prescribed for him and given him by the nurse, but their character was excluded by the trial court as privileged. The record shows that Hog had experience in the life insurance business and that just before taking the medical examination he discussed the matter of this illness with his partner. He died of coronary arterial disease.

It is therefore obvious that Hog purposely concealed from the defendant the fact that he had been treated by Dr. Pollock, that he had been sent to a hospital where a cardiogram of his heart action had been taken, and that these were facts which the defendant was entitled to know before it agreed to accept him as a risk. It is the plaintiff's contention that inasmuch as he disclosed that Dr. Kesting treated him just prior to Dr. Pollock's professional attention he was not bound to disclose Dr. Pollock's services or the fact that he had been at the hospital for the purpose of having the cardiogram taken, and that inasmuch as there is no express evidence that Hog knew the purpose of taking the cardiogram or the seriousness of his condition the record does not disclose intentional fraud on his part. It appears that Hog and his partner were indebted to the plaintiff and that it was at the plaintiff's suggestion that they both sought insurance on their lives, which they assigned to the plaintiff as security for that indebtedness. It is plaintiff's contention that because the plaintiff is a Wisconsin corporation and that its officers in that state sought the insurance from the defendant, which then sent the application to Minnesota for execution, and that at the issuance of the policies they were assigned and delivered to plaintiff, the contract became a Wisconsin contract governed by the laws of that state [2Wisconsin St. 1931, § 209.07] which provide that in the absence of intentional fraud or deceit the certificate of the examining physician to the good health of the applicant estops the insurer from the defense that the insured was not in the condition of health required by the policy at the time of its issue;

2"In any case where the medical examiner, or physician acting as such, of any life or disability insurance company or association doing business in this state, shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall thereby be estopped from setting up in defense of an action on such policy or certificate that the insured was not in the condition of health required by the policy at the time of the issue or delivery thereof, unless the same was procured by or through the fraud or deceit of the insured. The provisions of this section shall apply to fraternal or mutual benefit societies."

whereas it is the contention of the defendant that the policy is a Minnesota contract, subject to [3] Mason Minn. St. 1927, § 3370, permitting the insurer to avoid a policy where a misrepresentation, though innocent, increased the risk of loss.

It was Hog's duty to give truthful answers to the questions relative to medical attention and treatment. "They were material to the risk and, if false, the policy may be avoided," unless the consultation or treatment not disclosed was for a slight or temporary ailment. Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 136, 203 N. W. 600, 601. In his statement to the medical examiner which accompanied his application for insurance Hog was asked:

"Have you sought professional advice as to your health or have you been treated within the last five years? If so, by whom and for what ailment?"

To which he answered "Yes." As to details, he gave the name of Dr. Kesting and described the illness as follows:

"August, 1932—Indigestion from overeating two heavy meals. Results—Well—Lasted two days—no pain—just nausea—Vomiting one night."

In reply to the question inquiring if he had ever been in a hospital for treatment, observation, or diagnosis and, if so, to give the dates, duration of stay, name of ailment, and name of institution, he answered "No." At the bottom of this statement to the medical examiner and over Hog's signature was the statement that his answers to the questions "are complete and true and shall be the basis of the policy or contract hereby applied for." Quite obviously the answers to these questions were not complete or true; and, unless the ailments which he failed to report were trivial or temporary and with so little bearing upon the acceptance of the hazard as to be negligible, the policy may be avoided on that account.

---

[3]"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

The appellant contends that an incomplete answer is not a false answer and cites the case of Rupert v. Supreme Court U. O. of F. 94 Minn. 293, 102 N. W. 715, which in turn is based upon Hale v. Life Ind. & Inv. Co. 65 Minn. 548, 68 N. W. 182. In the latter case, according to the opinion, there was no representation that the answer was full or complete; and the Rupert case, insofar as the consultation with physicians is concerned, depends entirely upon the Hale case. The cases are clearly distinguishable from the case at bar. If by an incomplete answer a deception is accomplished, it is just as much a fraud upon the insurer as a totally false answer.

The burden was upon the defendant to show the falsity of the answers, Chambers v. N. W. Mut. L. Ins. Co. 64 Minn. 495, 67 N. W. 367, 58 A. S. R. 549; but, having done so and having shown the extent of Dr. Pollock's attendance and the hospital diagnosis, the burden then shifted to the plaintiff to show that Dr. Pollock's attendance was for a matter of negligible importance, Bullock v. Mutual L. Ins. Co. 166 Mich. 240, 131 N. W. 574. In that case the insured disclosed the attentions of one physician but did not disclose those of another who had attended him for some time. This was shown by the defendant, which went as far as it could without leading to privileged matter. The court held that such a showing was sufficient to cast the duty upon the plaintiff to show that the treatment was for some ailment that did not seriously undermine the insured's health. See also Rhode v. Metropolitan L. Co. 129 Mich. 112, 88 N. W. 400. In Michigan, as with us, there is no avoidance of the policy for failure to disclose treatment for trivial or temporary indisposition. Hann v. National Union, 97 Mich. 513, 56 N. W. 834, 37 A. S. R. 365; Plumb v. Penn Mut. L. Ins. Co. 108 Mich. 94, 65 N. W. 611. Such being the case, we deem the Michigan rule a fair and just one and adopt it here. Any other would suppress truth and further injustice.

Therefore, even if the cardiogram was privileged and so inadmissible (a question we do not decide), the record is conclusive that plaintiff failed to support the burden cast upon it and to show that the answers were false only as to matters of negligible importance. It successfully kept from the court all information on that subject,

and there was nothing to go to the jury. In the light of the concededly proper interpretation of the cardiogram, any attempt in that direction would have been fatal to plaintiff's case.

We come then to the question of the insured's intent to deceive, and here again we think the trial court was right in interpreting the record as conclusive of the presence of such wilful deceit. The illness was recent, it was serious enough to call for a number of professional visits. On one day there were three such visits by Dr. Pollock, followed a few days later by the visit to the hospital for diagnosis by the cardiograph. That the insured still had this in mind at the time the application was made is shown by the undisputed testimony of the insured's partner, who discussed it with him the very day of the examination. Reasonable minds could not judicially arrive at any other conclusion than that of the trial court. Any other would be a reflection upon the administration of justice. Consequently, as said by the trial court, the question whether the Wisconsin or the Minnesota statute applies is not important. Under either the plaintiff may not recover.

Order affirmed.

