# RICHARD A. BLAZEK v. NORTH AMERICAN LIFE & CASUALTY COMPANY.

87 N. W. (2d) 36.

December 6, 1957—No. 37,131.

*Johnson & Sands* and *Maurice C. Lizee,* for appellant.
*Conrad J. Carr,* for respondent.

KNUTSON, JUSTICE.

This is an action to recover benefits under a health and accident insurance policy. Plaintiff had a verdict for $6,680 and defendant appeals from a judgment entered thereon.

Plaintiff worked his way up from a masonry helper through a four-year bricklayer apprenticeship until he received his journeyman's card. Subsequently he went into business for himself as a masonry contractor. He was industrious and the quality of his work was so exceptional that at the time of his injury he always had more jobs than he could handle and was constantly in demand by contractors for both residential and commercial construction. Plaintiff frequently worked 18 hours or more a day and even a part of Sundays was devoted to his business. Besides bricklaying plaintiff did other physical labor which required much heavy lifting, including carrying cement blocks and loading and unloading trucks with materials and equipment weighing up to 250 pounds. He also performed supervisory functions and the usual office work of the business. At peak capacity he employed five or six bricklayers besides himself and a helper for each man.

Profits grew as the business prospered. He earned close to $6,000 during the last half of 1950, the first six months of his new operation, and $8,225.32 for the whole year. His net income for 1951 was over $12,000 and for 1952 was $14,087.76.

The injury was sustained January 14, 1953, at the Hasty Tasty Cafe in Minneapolis where plaintiff's men were working. Two bricklayers and one helper were on the job. Ordinarily each bricklayer had a helper and it was essential that day since the particular nature of the work required cement and bricks in large quantities. Plaintiff, therefore, performed the duties of a helper to facilitate the work. While carrying mortar plaintiff twisted his ankle. His knees buckled and he fell. He felt

a "clunk" in his back and suffered some pain but continued working despite the development of a large lump about half the size of a goose egg on his left hand. The pain forced him to stop working before the rest of the men. He returned home, ate, and then sat in an easy chair. He became uncomfortable and tried to arise but could do so only with great difficulty. After taking one or two steps, he fell to the floor. He was able to drag himself over to the bed, but the pain was severe and the lump continued to grow. After contacting a doctor, who advised the application of hot towels to relieve the pain, plaintiff was confined to bed for a few days until he was able to see Dr. Melvin C. Erickson, a chiropractor. There followed eight months during which plaintiff saw Dr. Erickson, as well as two osteopaths, off and on. The pain grew more unbearable and the treatments did little to relieve it. He had trouble walking and was so unsteady that it was difficult to hold a cup of coffee. His left leg became numb. Finally he consulted Dr. Harvey O'Phelan, an orthopedic surgeon, who found it necessary to operate for a prolapsed disc. The operation afforded relief but the pain continued, relieved only by pills which plaintiff has taken constantly since the operation. It appears that another operation is necessary for a spinal fusion. He left the hospital wearing a plaster cast but this caused further pain. He tried a brace but his skin became irritated and his back was covered with open sores. Up to the time of the trial he had worn 12 or 13 casts.

Aside from an hour or two, when he performed some minor tasks relating to jobs which he had finished, plaintiff did no work at all from January 14, 1953, until January or February 1954. At that time he went to work as a bricklayer for a contractor, with whom he remained until August or September 1955. He then started to work for another contractor, for whom he was working up to the time of trial. During that period he did not work full time. There is ample evidence that he arrived late and left early and sometimes did not get to work at all. He was forced to miss weeks at a time when his back troubled him and averaged only 20 hours of labor a week. He has done no contracting since the injury. His income dropped correspondingly. In 1954 it was about $6,000 and at the trial it was estimated that his earnings were about the same for 1955. This is about half of his earnings when he

was in business for himself.

Plaintiff carried health and accident insurance with defendant. The application was executed on October 6, 1952, although the manner in which it was completed is not clear. From the evidence the jury could find that plaintiff signed the application in blank and that it was later filled out by Einar Carlson, defendant's soliciting agent, from knowledge obtained during former dealings with the plaintiff, or it could find that it was filled out in response to questions which Carlson put to plaintiff at the time. In any event, the application shows the following:

"10. d. Have you, during the past five years, had any illness, injury, medical attention or advice? Yes. * * * [He indicated he had had an appendectomy in 1948 by Dr. Alfred Baker, Minneapolis, and was laid up for five days.]

* * * * *

"12. Do you agree that any accident or sickness policy issued on the basis of this application will not cover any condition which existed or originated before the date such policy takes effect and the right to recovery under such policy shall be barred in the event any of the above information, material either to the acceptance of the risk or to the hazard assumed by the Company, is false? Yes."

From the evidence it appears that within five years preceding the application plaintiff had seen a doctor and had been treated for a sore back on various occasions and also for a sore shoulder, stiff neck, and sore thumb. A policy was subsequently issued to plaintiff containing certain provisions material to this case.[1]

---

[1] "TOTAL LOSS OF TIME—ACCIDENT INDEMNITY

"1. If 'such injury' shall, within sixty (60) days after the date of accident, totally and continuously disable the Insured and prevent him from performing every duty pertaining to his occupation, the Company will pay monthly indemnity * * * for total loss of time for the period of such continuous total disability but not to exceed the period specified therein [life].

"PARTIAL LOSS OF TIME—ACCIDENT INDEMNITY

"2. Or, if 'such injury' shall, within sixty (60) days after the date of accident or immediately following a period of total disability, continuously disable the Insured and prevent him from performing an important daily duty pertaining to his occupation, the Company will pay monthly

Prior to the making of the application Carlson had helped plaintiff collect benefits for minor injuries under another accident policy which the latter carried with the Continental Insurance Company. One was for an injury to plaintiff's thumb and the other was for a stiff neck and sore shoulder which he sustained after he either fell or jumped from a scaffold two to three feet from the ground. Carlson had filled out the proper forms and sent them in for payment. He had also solicited plaintiff over a long period of time with respect to this policy and had persuaded him to permit the Continental policy to lapse and replace it with this one. Carlson visited plaintiff within five days after his injury and three or four times thereafter until August 1953. Whether or not he was informed of plaintiff's trouble is not clear. In August 1953 plaintiff was provided with forms which he signed in blank, to be completed by the agent. These forms set forth the accident date as January 14, 1953. Plaintiff claimed that Carlson advised him to have the operation and said that everything would be taken care of.

After he returned from the hospital, plaintiff received a check from defendant. Two other payments were made by the company after persistent efforts by plaintiff. At the time of the first payment, plaintiff renewed his policy. Part of the premium was refunded in June 1954 but plaintiff refused to sign a release which was presented to him.

In February 1954 the defendant wrote to plaintiff informing him that

---

indemnity * * * for the period of such continuous partial disability * * *.

\* \* \* \* \*

"WAIVER OF PREMIUM

"If the Insured under this policy becomes disabled and receives indemnities * * * for a period of six consecutive months, the Company will refund any premium paid during such six months of disability, and also the Company will waive payment of any future premium, the due date of which occurs during the continuous period the Insured is disabled * * *.

\* \* \* \* \*

"STANDARD PROVISIONS
\* \* \* \* \*

"4. Written notice of injury * * * on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury * * *."

it would make no further payments because he had not been under the personal attendance of a qualified physician since September 1953. The final payment was received from defendant two months after this letter.

At the trial the court submitted three issues to the jury: (1) Whether the plaintiff had misrepresented his physical condition in his application and if so, whether this materially affected the acceptance of the risk or the hazard assumed by the company; (2) whether plaintiff was totally disabled;[2] and (3) whether defendant had waived its right to deny recovery under the policy.[3]

There was a verdict for the plaintiff. The correctness of the jury's finding and the court's charge forms the basis of this appeal.

■ We must first consider the problem posed by the statements which plaintiff made or failed to make in his application for insurance. There is no doubt that, if he acted with actual intent to deceive or if the statements materially affected either the acceptance of the risk or the hazard assumed by the insurer, the defendant would be within its

---

[2]The court charged the jury: "Total disability does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It is sufficient if his injuries were of such a character that common care and prudence required him to desist from the transacting of any business so long as it was reasonably necessary to effectuate a cure.

"An injured person may be held to be totally disabled if he is unable to perform the substantial and the material parts of his occupation with substantial continuity.

"The words 'totally disabled' when used are not to be literally construed as to mean a state of absolute helplessness, but rather to be a state of inability to do all of the substantial and material acts necessary to the carrying on of the insured's calling in substantially a customary and usual manner."

[3]The court charged in substance that waiver was the intentional and voluntary relinquishment of a known right, that it might be inferred from acts or declarations by the holder of the right, that the waiver in this case might consist of conduct inconsistent with an intention to insist on strict compliance with the insurance contract, and that to waive the notice provision, the insurance company had to be in possession of all the facts which constituted the breach.

rights to deny liability and avoid the policy.[4]

It is the defendant's claim that the court erred in submitting to the jury the question of whether the statements in the application materially affected the acceptance of the risk or the hazard assumed by the insurer.[5] It contends that the court should have ruled in its favor on this issue as a matter of law.

We know of no case under M. S. A. 62.06 where we have held as a matter of law that a statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. There are cases where this court has held as a matter of law that the risk of loss to an insurer was increased by misrepresentations in an application,[6] but all of those cases arose under § 60.85,[7] dealing with life insurance contracts. Moreover, in all but one of them the misrepresentations left little doubt that there was an intent to deceive.[8] Only in Lawien v. Metropolitan Life Ins. Co. 211 Minn. 211, 300 N. W. 823, is there a

---

[4]M. S. A. 62.06, relating to accident and health insurance, provides:
"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

[5]No question at all is raised regarding any actual intent on plaintiff's part to deceive.

[6]Lawien v. Metropolitan Life Ins. Co. 211 Minn. 211, 300 N. W. 823; Sorenson v. New York Life Ins. Co. 195 Minn. 298, 262 N. W. 868; Harnischfeger Sales Corp. v. National Life Ins. Co. 195 Minn. 31, 261 N. W. 580; Shaughnessy v. New York Life Ins. Co. 163 Minn. 134, 203 N. W. 600; Flikeid v. New York Life Ins. Co. 163 Minn. 127, 203 N. W. 598; Silverstein v. Knights and L. of S. 129 Minn. 340, 152 N. W. 724.

[7]Section 60.85 provides: "No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

[8]Sorenson v. New York Life Ins. Co. 195 Minn. 298, 262 N. W. 868; Harnischfeger Sales Corp. v. National Life Ins. Co. 195 Minn. 31, 261 N. W. 580; Shaughnessy v. New York Life Ins. Co. 163 Minn. 134, 203 N. W. 600; Flikeid v. New York Life Ins. Co. 163 Minn. 127, 203 N. W. 598; Silverstein v. Knights and L. of S. 129 Minn. 340, 152 N. W. 724.

doubt as to the applicant's intent, and even there, it is not entirely clear that the insured failed to appreciate the seriousness of his condition.[9]

Nevertheless, in cases arising under both sections, it appears to be the settled law that the general questions in an application calling for information concerning former ailments do not require the disclosure of ailments of a trivial, temporary, or unimportant nature, but only of a serious, dangerous, and permanent character.[10] For this reason this court has been unwilling to hold that failure to record occasional visits to a doctor about apparently minor disturbances is a sufficient reason to deny recovery under these policies.[11] Rather it has approved the action of the trial court in leaving it to the jury to determine the severity of the ailment and its effect upon the acceptance of the risk or the hazard assumed,[12] even where treatment has been over a prolonged period of time[13] or where death ensued.[14]

No doubt there are some diseases and disabilities which could be construed, as a matter of law, to materially affect the risk or hazard which an insurer is considering. But were this court to hold as a matter of law that a disease or disability is present on the basis of single isolated occurrences it would arrogate diagnostic powers which in many

---

[9]Visits to a clinic were confided to the soliciting agent, but not to the examining physician. Cf. Harnischfeger Sales Corp. v. National Life Ins. Co. 195 Minn. 31, 261 N. W. 580.

[10]For § 60.85, see Gruber v. German Roman Catholic Aid Society, 113 Minn. 340, 343, 129 N. W. 581, 582; for § 62.06, see Mack v. Pacific Mutual Life Ins. Co. 167 Minn. 53, 57, 208 N. W. 410, 412.

[11]Mack v. Pacific Mutual Life Ins. Co. 167 Minn. 53, 208 N. W. 410; Powers v. Fidelity & Cas. Co. 144 Minn. 282, 175 N. W. 111.

[12]Jensvold v. Minnesota Commercial Men's Assn. 192 Minn. 475, 257 N. W. 86; Mack v. Pacific Mutual Life Ins. Co. 167 Minn. 53, 208 N. W. 410; Ivanesovich v. North American Life & Cas. Co. 145 Minn. 175, 176 N. W. 502; Powers v. Fidelity & Cas. Co. 144 Minn. 282, 175 N. W. 111; Zimmerman v. Bankers Cas. Co. 138 Minn. 442, 165 N. W. 271; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474.

[13]Cf. Rice v. New York Life Ins. Co. 207 Minn. 268, 290 N. W. 798.

[14]Powers v. Fidelity & Cas. Co. 144 Minn. 282, 175 N. W. 111. Cf. Sanne v. Metropolitan Life Ins. Co. 218 Minn. 181, 15 N. W. (2d) 524; Robbins v. New York Life Ins. Co. 195 Minn. 205, 262 N. W. 210, 872.

cases even medical science lacks.[15]

In the instant case the evidence clearly discloses that plaintiff's occupation required him to do a considerable amount of heavy work. An occasional sprain or strain might not be unusual. During the three years preceding his injury he visited Dr. Erickson ten times concerning five disturbances. From this the jury could properly find that these were trivial and temporary and neither constituted a preexisting condition nor were required items for disclosure.

In Schaedler v. New York Life Ins. Co. 201 Minn. 327, 276 N. W. 235, the insured failed to list visits to a chiropractor in his application when, in fact, he had seen one for a few backaches. We held that occasional backaches did not constitute a prior injury and that the jury could find these disturbances so trivial and temporary as to be properly omitted.[16]

The conclusion we have reached seems proper when the circumstances under which the application in the instant case was completed are reviewed. The testimony was far from clear regarding the details. Plaintiff claims that he merely signed the application and that Carlson completed it from facts he had learned previously. Carlson claimed that he had asked all the questions and that plaintiff had answered them. Mrs. Blazek, who was present, was able to recall very little and her testimony is not of much assistance. It is true that Carlson's testimony was uncontradicted but the jury was not required to accept it merely because it was uncontradicted if it was improbable or if surrounding

---

[15]Cf. Laury v. Northwestern Mutual Life Ins. Co. 180 Minn. 205, 210, 230 N. W. 648, 650, 231 N. W. 824, wherein we stated:

"* * * We should not, in answers to complicated and equivocal questions, seek the misrepresentation which as a matter of law increases the risk. For instance, it may be held as a matter of law that an affliction known as epilepsy increases the risk, but the same should not be held in respect to a single incident of unconsciousness."

[16]We there pointed out, through Mr. Justice Holt, the rationale for such a decision by answering this question in the negative: "Would any ordinary person with such a record of continuous hard labor * * * think that he had had an injury or accident worth mentioning in an application for disability insurance?" Schaedler v. New York Life Ins. Co. 201 Minn. 327, 334, 276 N. W. 235, 240.

facts and circumstances furnished reasonable grounds for doubting its credibility.[17]

Carlson was an interested witness. He and the company were after business. They were winning plaintiff away from a company in which he was carrying similar insurance. The jury was justified in believing that the statements were passed over lightly, that they were met by a general statement on the part of plaintiff that he was all right or that nothing was the matter with him, without an appreciation of their real significance, and that with such general statement the defendant chose to be satisfied.[18]

In making out the application Carlson was the agent of the company and not of the insured.[19] Since he had previously filled out two claim blanks for plaintiff, he was aware of plaintiff's prior treatments by the doctor. Yet he chose not to mention them to plaintiff in case the latter might wish to include them. We are satisfied on the record here that the jury was justified in concluding that both the plaintiff and the agent believed the trouble to be trivial, temporary, and unimportant.

 Defendant contends that plaintiff is not totally disabled within the meaning of the policy. It also contends that the court erred in its instructions to the jury regarding total disability by failing to use the language of the insurance contract. Defendant apparently takes the position that the language of the policy relating to total disability requires no judicial construction, especially in view of the provisions covering both total and partial disability. The wording of the policy in the instant case is nearly identical with the wording of the policy in Lobdill v. Laboring Men's Mutual Aid Assn. 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537. In that case the insured's injury resulted in a dislocated thumb, broken teeth, and a jarring of his head and neck which caused nervous prostration. Evidence was received that he occasionally handed out small articles and received change in payment from which defendant attempted to prove that he was not totally disabled from his occupation

[17]Olsson v. Midland Ins. Co. 138 Minn. 424, 427, 165 N. W. 474, 475.

[18]See, Olsson v. Midland Ins. Co. 138 Minn. 424, 429, 165 N. W. 474, 476.

[19]Kausal v. Minnesota Farmers' Mutual Fire Ins. Assn. 31 Minn. 17, 16 N. W. 430.

of a merchant. The court, speaking through Mr. Justice Mitchell, held that the jury might properly find that the insured was totally disabled. The policies in both the Lobdill case and the instant case insured against occupational disability. A charge to the jury in the instant case substantially in accord with the charge of the Lobdill case was entirely proper.

The first paragraph of the trial court's charge here regarding disability repeated the language used in the Lobdill case verbatim. The second and third paragraphs here raise the "substantial and material" criterion. In the Lobdill case the court speaks of the insured being "unable, substantially or to some material extent, to transact any kind of business pertaining to such occupation."[20] While these words were not repeated in the instant case verbatim, their meaning was clearly conveyed to the jury.

We recognize that the inability to perform some kinds of business pertaining to his occupation would not constitute total disability within the meaning of this policy.[21] However, plaintiff's occupation was stated in the application as a brick and stone contractor and his duties were listed as "Supervisory and brick laying." Clearly, the evidence established that he was unable to do any supervisory work, and the jury might well conclude from the manner in which he was forced to labor that the work was so debilitating as to be a useless and harmful expenditure of effort. Under the evidence the jury was justified in finding that the plaintiff was totally disabled. The provision in defendant's policy covering partial disability does not alter the situation. There is a wide area between the definitions of total disability ("performing every duty pertaining to his occupation") and partial disability ("performing an important daily duty pertaining to his occupation") in this contract which was susceptible of judicial interpretation. The instruction given was not erroneous.

The Lobdill case is the leading Minnesota case dealing with the subject of total disability. The law stated therein has been cited with

---

[20]Lobdill v. Laboring Men's Mutual Aid Assn. 69 Minn. 14, 17, 71 N. W. 696, 697, 38 L. R. A. 537.

[21]Cf. Lobdill v. Laboring Men's Mutual Aid Assn. 69 Minn. 14, 17, 71 N. W. 696, 697.

approval for 60 years when we have had occasion to construe total disability clauses.[22] Of course, the jury in this case, under a charge based on the Lobdill case, might have found from the facts that the plaintiff was not totally disabled and we would not reverse its finding.[23] But that is because we will not substitute our judgment for theirs in a case where reasonable men could differ. Since this was a case for the jury and since the issue was submitted to it under a proper charge, the jury could properly find that plaintiff was totally disabled within the terms of the policy.

■ Defendant, nevertheless, claims that even so plaintiff is barred from recovering under the policy. One of the conditions precedent to indemnity is the giving of written notice to the company of injury on which a claim may be based within 20 days after the accident. This plaintiff failed to do, and it is admitted that he is entitled to no further relief unless the defendant waived its right to deny recovery, which plaintiff claims it did.

Defendant contends that the court erred in submitting to the jury the question of whether defendant waived the 20-day notice requirement. Its position is that the court should have determined as a matter of law that there was no waiver. In this instance there was a series of equivocal actions by the company from which numerous inferences might be drawn, and it was for the jury to decide what meaning should be placed upon them.[24] The court's charge in respect to waiver was a correct statement of the law.[25] Both the waiver itself and the intent to waive

[22]Weum v. Mutual Benefit Health & Acc. Assn. 237 Minn. 89, 54 N. W. (2d) 20; Lorentz v. Aetna Life Ins. Co. 197 Minn. 205, 266 N. W. 699; Wilson v. Metropolitan Life Ins. Co. 187 Minn. 462, 245 N. W. 826; Carson v. New York Life Ins. Co. 162 Minn. 458, 203 N. W. 209; Monahan v. Order of Columbian Knights, 88 Minn. 224, 92 N. W. 972.

[23]Koeberl v. Equitable Life Assur. Society, 190 Minn. 477, 252 N. W. 419.

[24]Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422; Jensvold v. Minnesota Commercial Men's Assn. 192 Minn. 475, 257 N. W. 86; Kassmir v. Prudential Ins. Co. 191 Minn. 340, 254 N. W. 446; Jones v. Fidelity & Cas. Co. 166 Minn. 100, 207 N. W. 179; Mee v. Bankers' Life Assn. 69 Minn. 210, 72 N. W. 74.

[25]Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 311 to 313, 41 N. W. (2d) 422, 424.

may be inferred from conduct which was inconsistent with the terms of the contract.

With knowledge of the date on which the injury occurred,[26] it made payments in November and December 1953, for the period during which plaintiff was still under the care of Dr. O'Phelan, although it might well have asserted its defense of failure to comply with the notice requirements. From this the jury might infer a waiver.[27] It accepted a premium, from which the inference that the company believed plaintiff to be only partially disabled and, therefore, insuring against future disability, might be drawn. On the other hand, if defendant knew or had reason to know that plaintiff was not fully recovered, this act might have been deemed a waiver of any defense under the notice provision.[28] The letter of February 1954 might. well be deemed an explanation of the company's position and no more. If so, no waiver could be based upon it.[29] If, however, its terms be deemed a denial of any further liability on the single ground that plaintiff was no longer under the care of a qualified physician, then defendant thereby waived all other defenses, including the 20-day notice provision.[30] The third payment in April 1954, two months after the company had denied any

---

[26]The claim stated the date of injury as January 14, 1953. There is no merit in the claim that testimony relating to the defendant's procedures with respect to plaintiff's claim should have been admitted. "* * * [S]uch a rule would allow a secret intention to defeat the legal effect of unequivocal and deliberate acts." Mee v. Bankers' Life Assn. 69 Minn. 210, 217, 72 N. W. 74, 77.

[27]Wold v. State Mutual Life Assur. Co. 198 Minn. 451, 270 N. W. 150. And see, Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422.

[28]See, Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, 52 A. L. R. (2d) 1144, and Vorlicky v. Metropolitan Life Ins. Co. 206 Minn. 34, 287 N. W. 109.

[29]Lindskog v. Equitable Life Assur. Society, 209 Minn. 13, 295 N. W. 70.

[30]Wait v. Journeymen Barbers' International Union, 210 Minn. 180, 297 N. W. 630; Jensvold v. Minnesota Commercial Men's Assn. 192 Minn. 475, 257 N. W. 86; Kassmir v. Prudential Ins. Co. 191 Minn. 340, 254 N. W. 446; Jones v. Fidelity & Cas. Co. 166 Minn. 100, 207 N. W. 179; Black v. Central Business Men's Assn. 162 Minn. 265, 202 N. W. 823;

further liability, might well be construed to be a waiver or perhaps an intention to repudiate the letter of February 1954. Finally, there was the refund of part of the premium in June 1954 which was provided for in the policy whenever disability payments had been made for six consecutive months.

In view of the conflicting inferences which might properly have been drawn from the facts, we cannot say that the court erred in submitting to the jury the issue of waiver. Implicit in the verdict is a finding that defendant had waived its right to stand on the notice provision of the policy. There was ample evidence to support the jury in this determination.

Affirmed.

Johnson v. Bankers Mutual Cas. Ins. Co. 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199; Zeitler v. National Cas. Co. 124 Minn. 478, 145 N. W. 395.