M. MEYER, as personal representative of the Estate of D. Meyer, Appellant,

v.

BLUE CROSS AND BLUE SHIELD OF MINNESOTA, Respondent,

MedCenters Health Plan, et al., Defendants.

No. C3–92–1990.

Court of Appeals of Minnesota.

May 18, 1993.

Review Denied July 15, 1993.

---

Dean L. McAdams, Maple Grove, for appellant.

Louise A. Dovre, Gregory M. Weyandt, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by HARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

This is a coverage dispute on a health insurance policy retroactively rescinded one year after its issuance. The evidence establishes a fact question for the jury, and we reverse the directed verdict and remand for a new trial.

## FACTS

Darwin Meyer, now deceased, applied for a health insurance policy from Blue Cross and Blue Shield of Minnesota on March 19, 1986. He did not include on his application a March 18 visit to Park Nicollet Clinic for a cough, his history of kidney stones, or a previous shoulder injury. He stated that he did not have other health coverage, although in fact he was covered by his ex-wife's health care provider. It is unknown whether he was aware of this coverage.

After receiving Meyer's application, Blue Cross notified him that it needed additional medical information. Blue Cross requested that a form be filled out by Meyer's current physician or that his physician submit a narrative account of his health. Meyer forwarded the request to Park Nicollet Clinic, but instead of filling out the Blue Cross form or submitting a narrative, the clinic provided copies of Meyer's medical records. The evidence does not establish when or how the records were forwarded to Blue Cross or whether they were complete records from both Park Nicollet clinics where Meyer had received medical care over the years.

In April 1986 Blue Cross approved Meyer's application and issued a policy with an effective date of March 25. In July Meyer was diagnosed as HIV-positive. He subsequently developed AIDS and died in July 1987. After Meyer became ill, substantially all of his medical bills were paid through his ex-wife's health care coverage. Meyer's Blue Cross policy had no coordination-of-benefits provision, and it is Meyer's estate that would receive the benefit of the Blue Cross payments.

Blue Cross became aware of the high expenses incurred in treating Meyer, and in November 1986 and January 1987 it again requested additional medical history information. In March 1987 Blue Cross informed Meyer of its intent to rescind his policy retroactive to its effective date. Approximately three months later, two weeks before Meyer's death, Blue Cross notified him that it had rescinded his policy due to material misrepresentations in his application.

The personal representative of Meyer's estate brought this action seeking reinstatement of the policy. At trial the district court granted Blue Cross' motion for a directed verdict at the close of the evidence. The court denied the estate's posttrial motions for reconsideration or for a new trial.

### ISSUE

Did the trial court err in directing a verdict that a false statement materially affected the insurer's acceptance of the policy risk?

### ANALYSIS

■ A motion for a directed verdict presents a question of law for the trial court on the sufficiency of the evidence to create a fact question for the jury. *M.W. Ettinger Transfer & Leasing Co. v. Schaper Mfg.*, 494 N.W.2d 29, 34 (Minn.1992). A trial court should grant the motion only when it would clearly be the court's duty to set aside a contrary jury verdict as manifestly against the evidence or impermissible under the applicable law. *Advanced Training Systems, Inc. v. Caswell Equip.*

*Co.,* 352 N.W.2d 1, 12 (Minn.1984). A reviewing court makes an independent judgment about the appropriateness of the directed verdict. *Chemlease Worldwide, Inc. v. Brace, Inc.,* 338 N.W.2d 428, 432 (Minn.1983).

■ The trial judge directed a verdict for Blue Cross on the ground that uncontradicted evidence showed that Blue Cross "would not have issued a policy if it had the medical records from March and April 1986 pursuant to Blue Cross and Blue Shield guidelines." A Blue Cross underwriter testified that Blue Cross would have declined coverage if it had seen the notation "cough, etiology uncertain" in the records from the March 18 visit, because it was Blue Cross' policy to decline coverage whenever an applicant had a condition of unknown origin.

Minn.Stat. § 62A.06, subd. 3 (1984) regulates the denial of coverage based on false statement:

> The falsity of any statement in the application for any policy covered by sections 62A.01 to 62A.09 hereof, may not bar the right to recovery thereunder unless such false statement *materially affected either the acceptance of the risk or the hazard assumed by the insurer.*

(Emphasis added.) The highlighted language has been part of Minnesota law since 1913. *See* 1967 Minn.Laws ch. 395, art. 3, § 6; 1957 Minn.Laws ch. 489, § 6; 1913 Minn.Laws ch. 156, § 6.

The Minnesota Supreme Court interpreted Minn.Stat. § 62A.06, subd. 3 in *Waite v. American Family Mut. Ins. Co.,* 352 N.W.2d 19 (Minn.1984). The insurer's underwriter in *Waite* testified that if the application had disclosed the policyholder's history of high blood pressure, the insurer would have made a further inquiry and likely would have denied coverage. *Waite,* 352 N.W.2d at 21. The supreme court did not allow the insurer to reformulate its acceptance. The court reasoned:

> If the application had been correctly answered, however, and American Family had then talked to Dr. Nelson, it would have learned, among other things, that Mrs. Waite had pleurisy, borderline hy-

pertension, and a current, normal electrocardiogram. [The underwriter] conceded these were factors the insurer would have considered. *A jury is not required to accept even uncontradicted testimony if improbable or if surrounding facts and circumstances afford reasonable grounds for doubting its credibility.* (Citation omitted.) On this record, we do not think it can be said as a matter of law the false answers in the application materially affected the risk.

*Waite,* 352 N.W.2d at 21–22 (emphasis added).

The supreme court has been unwilling to hold as a matter of law that failure to record occasional visits to a doctor about apparently minor disturbances is a sufficient reason to deny recovery. *Id.* at 21 (quoting *Blazek v. North Am. Life & Cas. Co,* 251 Minn. 130, 137, 87 N.W.2d 36, 42 (1957)). Except in rare instances, the court prefers "leaving it to the jury to determine the severity of the ailment and its effect upon the acceptance of the risk." *Id.*

The holdings of *Waite* and *Blazek* express a clear preference for juries to decide which statements on insurance applications were false and whether they materially affected the acceptance of the risk. A jury resolution is particularly appropriate in this case because of the uncertainties about what records Blue Cross possessed when it issued the policy, and whether it would have issued the policy had the application been filled out correctly.

For instance, even if Meyer had filled out his application *correctly* as of March 19, it may not have included the notation ("cough, etiology uncertain,") that would trigger Blue Cross' further inquiry. In addition if Blue Cross had contacted the doctor about the cough on March 24 when it received Meyer's application, it is unknown whether the doctor would have used the trigger words "unknown etiology" or would have sent the written records of the March 18 visit containing that phrase, or exactly what information would have been communicated.

Even if these underlying fact questions could be overlooked, the fundamental question of the materiality of the false statement remains. Whether a correctly filled-out application mentioning the cough would have led Blue Cross to decline coverage is not a subjective determination exclusively controlled by the insurer. As *Waite* and *Blazek* emphasize, materiality is a fact question based on the objective facts of the particular case, and "[a] jury is not required to accept even uncontradicted testimony if improbable or if surrounding facts and circumstances afford reasonable grounds for doubting its credibility." *Id.* at 22 (quoting *Blazek* at 139, 87 N.W.2d at 43).[1]

Reluctance to give conclusive effect to an insurer's testimony on its risk acceptance is supported by public policy. To accept the testimony as conclusive would permit insurers to engage in unrestrained "retroactive underwriting." Retroactive underwriting is a process by which an insurance company asks an applicant for health-related information, issues the policy, but does not follow up on the information until significant claims arise. The insurer then reexamines the application and requests additional information to see whether the applicant could have been excluded from coverage.

Blue Cross admits that it engages in a form of retroactive underwriting. In a memorandum supporting its motion for summary judgment on damages, Blue Cross stated:

> Previously, on November 18, 1986 and January 27, 1987, in response to his claims for coverage during his hospitalizations, [Blue Cross] requested additional information from Meyer regarding his previous health care status. [Blue Cross] does post-coverage underwriting.

In its case-in-chief, Meyer's estate presented evidence from an underwriting expert. The expert testified that even absent the March or April 1986 records, the submitted medical records contained a number

---

1. On appeal Blue Cross alternatively asserts that it is entitled to a directed verdict because Meyer was insured under another policy. The district court did not rely on this theory and, to the extent it is addressed in the briefs, we are not persuaded that as a matter of law this alternative basis is dispositive.

of references (to kidney stones, stomach problems, coughs, a sexually transmitted disease, a treatment center and corrections facility) that would or should have alerted Blue Cross that it might want to investigate further before initially approving the policy.

There are enough facts in this case from which a jury could conclude that Meyer made false statements that materially affected Blue Cross' decision to accept his application. Jurors could also decide that any misstatements were not material to Blue Cross' initial determination on coverage and that Blue Cross was engaging in retroactive underwriting to avoid paying amounts incurred to treat Meyer's AIDS. On this record the decision should belong to the jury, not the judge.

## DECISION

A jury must decide whether the applicant for a health insurance policy made false statements on his application that materially affected the insurer's acceptance of the risk under Minn.Stat. § 62A.06, subd. 3 so as to justify rescission of the policy. The district court erred in directing a verdict for the insurer, and we remand for a new trial.

**Reversed and remanded for a new trial.**